1  ROBERT S. GIANELLI, #82116
   JOSHUA S. DAVIS, #193187
2  ADRIAN J. BARRIO, #219266
   GIANELLI & MORRIS, A Law Corporation
3  550 South Hope Street, Suite 1645
   Los Angeles, California 90071
4  Tel: (213) 489-1600; Fax: (213) 489-1611
   rob.gianelli@gmlawyers.com
5  joshua.davis@gmlawyers.com
   adrian.barrio@gmlawyers.com
6
   CONAL DOYLE, Cal. Bar #227554
7  STEPHEN BEKE, Cal. Bar #290972
   DOYLE LAW
8  9401 Wilshire Blvd., Suite 608
   Beverly Hills, California 90212
9  Tel: (310) 385-0567; Fax (310) 943-1780
   conal@conaldoylelaw.com
10 sbeke@conaldoylelaw.com

11 Attorneys for Plaintiffs, DAVID TRUJILLO;
   DEANNA HARDEN; on behalf of themselves
12 and all others similarly situated

13

14

15                  UNITED STATES DISTRICT COURT

16        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

17

18 DAVID TRUJILLO; DEANNA              )  Case No.: 5:17-cv-2547
   HARDEN; on behalf of themselves and )
19 all others similarly situated,       )  **CLASS ACTION**
                                        )
20                        Plaintiffs,   )  **COMPLAINT FOR BENEFITS,**
                                        )  **DETERMINATION OF RIGHTS**
21               v.                     )  **AND BREACH OF FIDUCIARY**
                                        )  **DUTY UNDER ERISA**
22 UNITEDHEALTH GROUP INC.;            )
   UNITED HEALTHCARE SERVICES,         )
23 INC.; UNITEDHEALTHCARE              )
   INSURANCE COMPANY;                   )
24                                      )
                         Defendants.    )
25 _____)

26

27

28

1    Plaintiffs, David Trujillo and Deanna Harden, on behalf of themselves and all

2    others similarly situated, herein set forth the allegations of their Complaint against

3    Defendants UnitedHealth Group, Inc., UnitedHealthcare Services, Inc., and

4    UnitedHealthCare Insurance Company.

5                          **INTRODUCTION**

6        1.    Plaintiffs bring this action on behalf of themselves and a class of persons

7    with limb loss whose claims for prosthetic arm and leg devices have been improperly

8    denied by Defendants on the basis that the requested devices "do not meet the

9    minimum specifications of the enrollees needs." Defendants have developed and

10   implemented a Coverage Determination Guideline, "Prosthetic Devices, Wigs,

11   Specialized, Microprocessor or Myoelectric Limbs" (Guideline Number

12   CDG.018.06), that provides: "If more than one prosthetic device can meet the

13   member's functional needs, benefits are only available for the prosthetic device that

14   meets the minimum specifications of the member's needs." Pursuant to this directive,

15   Defendants have systematically denied claims for prosthetic arm and leg devices

16   without properly assessing or determining the claimant's functional needs, without

17   properly assessing or determining how the requested prosthetic device meets the

18   "minimum specifications" of the claimant's needs, and without ascertaining or

19   identifying an alternative prosthetic device that does meet the "minimum

20   specifications" of the claimant's needs. As a result of these actions, thousands of

21   persons with limb loss have had their claims for prosthetic arm and leg devices

22   denied by Defendants without proper consideration and review as required by the

23   provisions of the Employee Retirement and Income Security Act of 1974 ("ERISA").

24                    **JURISDICTION AND VENUE**

25       2.    This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it

26   involves claims by Plaintiffs for employee benefits under employee benefit plans

27   regulated and governed by ERISA. Subject matter jurisdiction is predicated under

28   ///

these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

3.      The Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process, and each defendant has minimum contacts with the United States. *See* 29 U.S.C. § 1132(e)(2).

4.      The claims of Plaintiffs and the putative class arise out of plans Defendants issued, administered, and/or implemented in this District. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

## THE PARTIES

5.      Plaintiffs were at all relevant times covered under employee welfare benefit plans regulated by ERISA and pursuant to which Plaintiffs are entitled to health care benefits.

6.      Defendant UnitedHealth Group Inc. is a public company whose stock is traded on the New York Stock Exchange. In 2016, it reported revenues of $184,840,000,000. Through its wholly-owned subsidiaries, including Defendants United Healthcare Services, Inc., and UnitedHealthcare Insurance Company (collectively "United"), it acts a fully integrated company that is in the business of insuring and administering health plans, most of which are employer-sponsored and governed by ERISA, 29 U.S.C. § 1001, et seq. ("United plans").

7.      Defendant UnitedHealth Group Inc. is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. It issues, administers, and makes benefit determinations related to ERISA health plans around the country through its various wholly-owned and controlled subsidiaries, including defendants United HealthCare Services, Inc., and United HealthCare Insurance Company. Defendant UnitedHealth Group Inc. operates as, and owns the trademark to, "UnitedHealthcare."

8.      Defendant United Healthcare Services, Inc. is a Minnesota corporation

with its principal place of business in Minnetonka, Minnesota. It is a wholly-owned and controlled subsidiary of UnitedHealth Group Inc. Through and in combination with its state-level UnitedHealthcare subsidiaries, affiliates, and agents, it issues and administers health plans, including employer group health plans and employer ancillary and specialty benefits plans, which are governed by ERISA.

9.    Defendant United HealthCare Insurance Company is a wholly-owned subsidiary of Unimerica, Inc., which is wholly-owned and controlled by UnitedHealthcare Services, Inc. It is the underwriter of insurance provided by UnitedHealthcare Services, Inc. and its state-level subsidiaries/affiliates. It participates in the claims administration process related to United plans insured or administered by such subsidiaries/affiliates, and issues and administers other United plans, most of which are governed by ERISA.

10.    Defendants, other than UnitedHealth Group Inc., do not operate independently and in their own interests, but serve solely to fulfill the purpose, goals and policies of Defendant UnitedHealth Group, Inc.

11.    Under the terms of all United plans, United is obligated to make benefit payments from its own assets (in the case of fully-insured United plans) or the assets of the plan itself (in the case of self-insured United plans) when someone insured by one of those plans obtains health care treatment that is covered by the terms of that plan. With respect to all United plans, United serves as the claims administrator, responsible for determining whether any claim is covered by any particular United plan and effectuating any resulting benefit payment. As such, United acts as an ERISA fiduciary with respect to all United plans, including the plans covering Plaintiffs.

## SUBSTANTIVE ALLEGATIONS

### A.    Prosthetic arm and leg devices.

12.    There are approximately 2 million people living with limb loss in the United States. Approximately 185,000 amputations occur in the United

States each year, about 500 a day.

13.     People with limb loss require the use of a prosthesis, an artificial extension that replaces a missing body part such as an upper or lower body extremity. The development of prostheses is part of the field of biomechatronics, the science of fusing mechanical devices with human muscle, skeleton, and nervous systems to assist or enhance motor control lost by trauma, disease, or defect. The type of prosthesis used is determined largely by the extent of an amputation or loss and location of the missing extremity.

14.     Lower limb prosthetic devices are the transfemoral (above the knee) prosthesis and the transtibial (below the knee) prosthesis. Improvements in technology have allowed manufacturers to use microprocessors to power artificial knees and feet in these devices. The use of this technology has allowed manufacturers to develop lower leg devices that more closely resemble the movements of real legs with knee and feet components that react to stimuli in real time. This technology minimizes stumbles and falls, allows walking on stairs and uneven terrain, and enables patients to more fully perform activities of daily living. Microprocessor technology has been used in prosthetics for decades-and has long been "standard" issue in the industry.

15.     Upper limb prosthetic devices are used to replace essential functions of the arm, hands, wrist, and elbow. By the 1980s, myoelectric arms were being used in rehabilitation centers around the world and are common issue today and have been for decades. Compared with body-powered arms, myoelectric arms feature superior comfort, aesthetics, and functionality, giving the amputee the ability to move digits through muscle control. Myoelectric arms, therefore, are essential for anyone with a need to move their hands with dexterity, to grasp objects, and perform the various other essential activities of daily living.

///

///

4

**B.    United improperly denies claims for prosthetic arm and leg devices pursuant to Coverage Determination Guideline CDG.018.06.**

16.    To enable its administration of fully insured and self-insured health plans, United has developed Coverage Determination Guidelines, that is, written positions on the covered or excluded nature of certain medical treatments under United plans.

17.    As is stated on the United website:

Coverage Determination Guidelines are used to determine whether a service falls within a benefit category or is excluded from coverage. Coverage Determination Guidelines may address such matters as whether services are skilled versus custodial, or reconstructive versus cosmetic.

18.    United applies the provisions of its Coverage Determination Guidelines in deciding whether to pay or deny claims under United plans.

19.    United has used a Coverage Determination Guideline called "Prosthetic Devices, Wigs, Specialized, Microprocessor or Myoelectric Limbs" (Guideline Number CDG.018.06) to deny claims for prosthetic arm and leg devices. United previously utilized a guideline for various types of prostheses called "Prosthetic Devices and Wigs" and a separate guideline for "Specialized, Microprocessor or Myoelectric Limbs." Commencing in February of 2015, United merged those guidelines into number CDG.018.03 with the current name. Hereinafter the various iterations of these guidelines will be referred to collectively as "CD.018.06," unless a particular version is specified.

20.    During the relevant time period, CDG.018.06 has contained the follow coverage position:

If more than one prosthetic device can meet the member's functional needs, benefits are only available for the prosthetic device that meets the minimum specifications for the member's needs.

21.    United has used this provision to systematically deny prosthetic arm and leg devices without properly assessing or determining the claimant's functional

5

needs, without properly assessing or determining how the requested prosthetic device meets the "minimum specifications" of the claimant's needs, and without ascertaining or identifying an alternative prosthetic device that does meet the "minimum specifications" of the claimant's needs.

22. Consistent therewith, United's notices of adverse benefit determinations of prosthetic arm and leg devices made pursuant to CD.018.06 have not identified the functional needs of the claimants, have not stated why the requested prosthetic device does not meet the "minimum specifications" of the claimant's needs, and have not identified the prosthetic device that does meet the "minimum specifications" of the claimant's needs.

**D.   United's denial of Plaintiff David Trujillo's request for a prosthetic leg device.**

23. At all relevant times, David Trujillo was covered under a fully insured United plan issued to his wife's employer.

24. Mr. Trujillo underwent a below the knee amputation of his left leg that resulted from severe injuries he suffered in a March 2017 accident. At the time of the accident, Mr. Trujillo was working as an account manager for a valet and parking services company. He enjoyed an active live style that included jogging, hiking, and mountain biking. He is now 27 years old.

25. Mr. Trujillo was referred by his physician to a team of prosthetists for a below the knee prosthetic device. Given Mr. Trujillo's activities of daily living, the prosthetists recommended a below the knee device that included a Trans-tibial High-Fidelity Interface (socket) prosthesis.

26. On May 12, 2017, United denied the request for the device pursuant to CDG.018.06 on the basis the device "may not be the most basic" leg that met Mr. Trujillo' needs.

> Here is the specific clinical reason for our decision: We received a request for an artificial leg for you. You had surgical removal of part of your left leg. We looked at the notes sent and the health plan's medical

policy. Your health plan's benefit document will cover the most basic artificial leg which can meet your needs.  The leg requested may not be the most basic. The request does not meet criteria and is not covered at this time.

27.     Mr. Trujillo appealed this decision. On June 6, 2016, United denied Mr. Trujillo's appeal pursuant to CDG.018.06 because the plan only covers "the most basic device that meets your needs."

28.     Mr. Trujillo requested that United reconsider its denial of his appeal. On August 23, 2017, United rejected the request for reconsideration under CDG.018.06 for the reason previously stated.

29.     In denying Mr. Trujillo's claim, United did not properly assess or determine: a) Mr. Trujillo's functional needs; b) the "minimum specifications" for Mr. Trujillo's needs; c) whether Mr. Trujillo's prosthetist was wrong about Mr. Trujillo's needs and the "minimum specifications" for those needs; and d) what alternative prosthetic device met Mr. Trujillo's needs.

30.     United's letters also failed to provide any facts or reasons supporting the denials and, instead, simply made the conclusory statement that the requested prosthetic device was not the most basic for Mr. Trujillo.

**E.     United's denial of Plaintiff Deanna Harden's request for her son's prosthetic arm device.**

31.     Logan Harden, age twelve, is the son of Deanna Harden. At all relevant times, Logan was covered under his mother's United plan that was self-insured by her employer and administered by United.

32.     Logan suffers from a congenitally-acquired absence of the right forearm and hand. As Logan has grown, he has required new prosthetic devices to fit his body. He needs the use of both hands to perform everyday functions including eating, self-care, typing on a keyboard, and holding objects, such as his trumpet, with two hands.

///

33.     After fully assessing Logan's needs, a prosthetist recommended an i-limb quantum device with a High-Fidelity socket/interface. This is a powered device with articulating fingers that simulates a human hand by providing the six fundamental grips of the human hand. This device allows individuals to cut food with both hands, use a keyboard, and perform many of the other daily tasks that cannot be accomplished with a limited grip device. Ms. Harden requested that United authorize coverage for this device for Logan.

34.     On August 18, 2016, United denied the request for the device under CDG.018.06 on the basis that the device exceeded the minimum specifications for Logan's needs.

> Here is the specific clinical reason for our decision: We have a request to cover an artificial arm for your child. The information we have indicates your child was born with parts of his arm missing. We reviewed your health plan medical criteria and your health plan benefit document for coverage of artificial arms. Your health plan covers artificial arms that meet the minimum specifications for your child's needs. The artificial arm requested exceeds the benefit provided under your health plan. Therefore, your health plan will not cover the requested device at this time.

35.     Ms. Harden appealed United's denial of the prosthetic device for Logan. On October 21, 2016, United Medical Director Gale Browning, M.D., reviewed the claim, and upheld the denial under CDG.018.06 stating:

> The requested prosthesis includes many features that exceed Logan's basic needs. Per your health plan, benefits are available for the most cost-effective prosthesis that would meet Logan's needs.

36.     Logan's physician thereafter wrote him a new prescription, and Logan's prosthetists put together a new detailed written order for a less expensive prosthesis. Logan's prosthetists also provided further documentation and letters explaining why a basic, passive prostheses did not meet Logan's needs.

8

37.     Logan's prosthetists then submitted this less expensive claim to United, but United again denied the claim. A letter from United Medical Director George L. Eisberg, M.D., stated that "[t]he prosthesis needed for your child's arm can be provided through the use of other devices than the one requested. Your health plan's criteria for coverage are not met. Therefore, the requested service is not a covered benefit."

38.     In denying Logan's claim, United did not properly assess or determine: a) Logan's functional needs; b) the "minimum specifications" for Logan's needs; c) whether Logan's prosthetist was wrong about Logan's needs and the "minimum specifications" for those needs; and d) what alternative prosthetic device met Logan's needs.

39.     United's letters also failed to provide any facts or reasons supporting the denials and, instead, simply made the conclusory statement that the requested prosthetic device did not meet the minimum specifications for Logan's needs.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure Rule 23. Pursuant to Rule 23(b)(1) and (b)(2), Plaintiffs seek certification of the following class:

> All persons covered under United plans, governed by ERISA, self-funded or fully insured, whose requests for prosthetic arm and leg devices have been denied during the applicable statute of limitations pursuant to United's Coverage Determination Guideline for Prosthetic Devices, Wigs, Specialized, Microprocessor or Myoelectric Limbs (CDG.018.06), and earlier versions thereof, on the basis that the requested device did not meet the minimum specifications of the person's needs.

41.     Plaintiffs and the class members reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

42.     This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because it meets the requirements of Rule 23(a) and Rule 23(b)1 and (b)(2).

**A.     Numerosity**

43.     The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believe that there are a substantial number of individuals covered under United plans who have been similarly affected.

**B.     Commonality**

44.     Common questions of law and fact exist as to all members of the proposed class.

**C.     Typicality**

45.     The claims of the named Plaintiffs are typical of the claims of the proposed class. Plaintiffs and all members of the class are similarly affected by Defendants' wrongful conduct.

**D.     Adequacy of representation**

46.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiffs are competent and experienced in litigating large and complex class actions.

**E.     Superiority of class action**

47.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practicable, and common questions of law and fact exist as to all class members.

48.     Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be

1  encountered in the management of this action that would preclude its maintenance as

2  a class action.

3  **F.     Rule 23(b) requirements**

4  49.     Inconsistent or varying adjudications with respect to individual members

5  of the class would establish incompatible standards of conduct for Defendants.

6  50.     Adjudications with respect to individual class members would be

7  dispositive of the interests of the other members not parties to the individual

8  adjudications or would substantially impair or impede their ability to protect their

9  interests.

10  51.     Defendants have acted or refused to act on grounds generally applicable

11  to the class, thereby making appropriate final injunctive relief or corresponding

12  declaratory relief with respect to the class as a whole.

13

14  **FIRST CLAIM FOR RELIEF**
**DENIAL OF PLAN BENEFITS AND FOR CLARIFICATION OF RIGHTS**

15  **UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(1)(B)]**

16  52.     Plaintiffs and the class members repeat and re-allege each and every

17  allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

18  53.     29 U.S.C. § 1132(a)(1)(B) entitles Plaintiffs to recover benefits due and

19  to enforce and clarify their rights to the benefits at issue.

20  54.     As set forth above, United has denied requests for prosthetic arm and leg

21  devices pursuant to CDG.018.06. That guideline provides that: "If more than one

22  prosthetic device can meet the member's functional needs, benefits are only available

23  for the prosthetic device that meets the "minimum specifications" of the member's

24  needs." United has systematically denied claims under this guideline for prosthetic

25  limb devices without properly assessing or determining the claimant's functional

26  needs, without properly assessing or determining whether the requested device meets

27  the "minimum specifications" of the claimant's needs, and without ascertaining or

28

11

identifying an artificial device that would meet the "minimum specifications" of the claimant's needs.

55.    United denied Plaintiff David Trujillo's request for a prosthetic leg device under CDG.018.06 on the basis that the device did not meet the minimum specifications for his needs (was not the "most basic" device for his needs). In doing so, United did not properly assess or determine: a) Mr. Trujillo's functional needs; b) the "minimum specifications" for Mr. Trujillo's needs; c) whether Mr. Trujillo's prosthetist was wrong about Mr. Trujillo's needs and the "minimum specifications" for those needs; and d) what alternative prosthetic device met Mr. Trujillo's needs.

56.    Mr. Trujillo has exhausted his administrative remedies, as alleged above.

57.    United denied Plaintiff Deanna Harden's request for her son's prosthetic arm device under CDG.018.06 on the basis that the device did not meet the minimum specifications for Logan's needs. In doing so, United did not properly assess or determine: a) Logan's functional needs; b) the "minimum specifications" for Logan's needs; c) whether Logan's prosthetist was wrong about Logan's needs and the "minimum specifications" for those needs; and d) what alternative prosthetic device met Logan's needs.

58.    Ms. Harden has exhausted her administrative remedies, as alleged above.

59.    Based on the foregoing, Plaintiffs and the class members seek the payment of medical expenses, interest thereon, a clarification of rights, and attorneys fees.

## SECOND CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(3)]

60.    Plaintiffs and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

61.    As alleged herein, United has acted as an ERISA fiduciary with respect to the administration and claims decisions under United plans and, in particular, has

12

1  acted an ERISA fiduciary in denying requests for prosthetic arm and leg devices, as
2  alleged herein.

3    62.    United has improperly denied Plaintiffs' and the class members'
4  requests for prosthetic arm and leg devices under CDG.018.06 in beach of its
5  fiduciary duty by creating and using irrelevant and amorphous guideline language to
6  justify denials and further its own financial interest in avoiding payment for
7  necessary prosthetic devices.

8    63.    United has also violated ERISA by failing to establish and maintain
9  reasonable claims procedures required by 29 C.F.R. 2560.503-1(b) when determining
10  claims for prosthetic arm and leg devices under CDG.018.06. United has not
11  instituted reasonable procedures for properly assessing or determining the claimant's
12  functional needs, for properly assessing or determining whether the requested device
13  meets the "minimum specifications" of the claimant's needs, and for ascertaining an
14  artificial device that would meet the "minimum specifications" of the claimant's
15  needs.

16    64.    Additionally, United has violated ERISA claim procedures for
17  providing notice of adverse benefit determinations as required by 29 U.S.C. section
18  1133 and 29 C.F.R. 2560.503-1(g) for denials of prosthetic arm and leg devices
19  under CDG.018.06. United has not properly advised claimants regarding the specific
20  reasons and clinical judgment for the adverse determinations of their claims by
21  failing to state why the requested device did not meet the minimum specifications of
22  the claimant's functional needs and by failing to identify the artificial device that did
23  meet the minimum specification of the claimant's needs.

24    65.    Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiffs and the class members
25  seek declaratory, equitable and remedial relief as follows:

26      a.    An order declaring that United's denials of claims for prosthetic
27  arm and leg devices under CDG.018.06 have been erroneously made pursuant to
28  erroneous guideline language, without the use of proper claims procedures, without

13

proper consideration of the relevant payment factors, and without adequate notices of adverse benefit determination as required by ERISA;

          b.     An injunction requiring United to revise the language of CDG.018.06;

          c.     An injunction requiring United to adopt and utilize proper claims procedures for the consideration of claims prosthetic arm and leg devices under CDG.018.06, including the use of proper notices of adverse benefit determination;

          d.     An injunction requiring United to reevaluate and reprocess Plaintiffs' and class members' claims under revised procedures compliant with the provisions of ERISA;

          e.     An injunction requiring United to provide notice to all class members of the reevaluation and reprocessing in the form and manner required by ERISA;

          f.     An accounting of any profits made by United from the monies representing the improperly denied claims and disgorgement of any profits;

          g.     Such other equitable and remedial relief as the Court may deem appropriate; and

          h.     Attorneys fees in an amount to be proven.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs and the class members pray for judgment against United as follows:

1.     Benefits denied Plaintiffs in an amount to be proven at trial, including interest;

2.     A clarification of rights to future benefits under the plan for all class members;

3.     Injunctive and declaratory relief, as described above;

4.     An accounting of any profits made and retained through the improper denial of claims and disgorgement of any profits;

5.    Attorneys' fees; and

6.    Such other equitable and remedial relief as the Court may deem just and proper.

DATED:   December 27, 2017              GIANELLI & MORRIS
                                        DOYLE LAW

                                   By:   /s/ Joshua S. Davis
                                         ROBERT S. GIANELLI
                                         JOSHUA S. DAVIS
                                         ADRIAN J. BARRIO
                                         Attorneys for Plaintiffs