**HOGAN LOVELLS US LLP**
Michael M. Maddigan (Bar No. 163450)
David W. Skaar (Bar No. 265377)
Harmony R. Gbe (Bar No. 313241)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
michael.maddigan@hoganlovells.com
david.skaar@hoganlovells.com
harmony.gbe@hoganlovells.com

Attorneys for Defendants
UNITEDHEALTH GROUP INCORPORATED;
UNITED HEALTHCARE SERVICES, INC.;
UNITEDHEALTHCARE INSURANCE
COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DAVID TRUJILLO; DEANNA HARDEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE SERVICES, INC.; UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>Defendants. | Case No. 5:17-cv-2547-JFW (KKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS UNITED HEALTHCARE SERVICES, INC. AND UNITEDHEALTHCARE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: April 8, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 7A (1st Street)<br>Judge: Honorable John F. Walter<br><br>Action filed: December 27, 2017<br>Motion hearing cutoff: April 8, 2019<br>Trial date: May 28, 2019 |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

STATEMENT OF UNCONTROVERTED FACTS .......................................... 2

A.  Plan Administration and Funding ......................................................... 2

B.  The Claims Administrator's Discretion Under Plaintiffs' Plans ................ 3

C.  Plan Terms Regarding Prosthetic Devices ........................................... 4

D.  UHC's Guidelines For Interpreting Benefit Plan Terms ........................ 5

E.  United's Review of Pre-Authorization Requests ................................... 5

F.  Plaintiffs' Pre-authorization Requests for Prosthetic Devices ................ 7

    1.  David Trujillo .............................................................................. 7

    2.  Deanna Harden .......................................................................... 9

G.  Brief Procedural History ..................................................................... 10

DISCUSSION .................................................................................................. 11

A.  Summary Judgment Legal Standard ................................................... 11

B.  United's Coverage Determinations Should Be Upheld ......................... 12

    1.  United's Coverage Determinations Are Reviewed For Abuse Of Discretion .................................................................... 12

    2.  United Did Not Abuse Its Discretion .......................................... 14

C.  There Is No Basis For Injunctive Relief Based On The Alleged Procedural Defects ............................................................................. 17

    1.  ERISA Claim Review Procedures ............................................... 17

    2.  United Complied With ERISA Claims Procedures ....................... 18

    3.  The Alleged Procedural Violations Would Not Entitle Plaintiffs To Relief ................................................................... 20

CONCLUSION ................................................................................................ 23

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF P'S & A'S ISO MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*,
    458 F.3d 955 (9th Cir. 2006) ........................................................................ 13, 14

*Barnes v. AT&T Pension Ben. Plan—Nonbargaines Prog.*,
    2012 WL 1657054 (N.D. Cal. May 10, 2012) ................................................... 21

*Booton v. Lockheed Med. Ben. Plan*,
    110 F.3d 1461 (9th Cir. 1997) ......................................................................... 19

*Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*,
    410 F.3d 1173 (9th Cir. 2005) ......................................................................... 13

*Chuck v. Hewlett Packard Co.*,
    455 F.3d 1026 (9th Cir. 2006) ......................................................................... 18

*Ellenburg v. Brockway, Inc.*,
    763 F.2d 1091 (9th Cir. 1985) ......................................................................... 21

*Finkelstein v. Guardian Life Ins. Co. of America*,
    2008 WL 8634992 (N.D. Cal. Nov. 23, 2008) .................................................. 18

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989) ....................................................................................... 13

*Hancock v. Montgomery Ward Long Term Disability Trust*,
    787 F.2d 1302 (9th Cir. 1986) ............................................................... 20, 21, 22

*Harder v. Bristol-Myers Squibb Co. Long Term Disability Plan*,
    281 F.Supp.3d 939, 951 (C.D. Cal. 2017) ....................................................... 19

*Kochenderfer v. Reliance Std. Life Ins. Co.*,
    2009 WL 4722831 (S.D. Cal. Dec. 4, 2009) .................................................... 19

*Krishan v. McDonnell Douglas Corp.*,
    873 F.Supp. 345 (C.D. Cal. 1994) ................................................................... 21

*Martin v. Aetna Life Ins. Co.*,
    223 F.Supp.3d 973, 983 (C.D. Cal. 2016) ....................................................... 19

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

MEMORANDUM OF P'S & A'S ISO MOTION
FOR SUMMARY JUDGMENT

*Montour v. Hartford Life & Acc. Ins. Co.*,
   588 F.3d 623 (9th Cir. 2009) ............................................................... 13

*Parker v. BankAmerica Corp.*,
   50 F.3d 757 (9th Cir. 1995) .......................................................... 20, 21

*Santiago v. Lockheed Martin Retirement Plan for Certain Hourly*
   *Employees*,
   2010 WL 11507587 (C.D. Cal. Mar. 10, 2010) ........................... 11, 13

*Siebert v. Std. Ins. Co. Disability Policy*,
   220 F.Supp.2d 1128 (C.D. Cal. 2002) ................................................ 17

*Terry v. Bayer Corp.*,
   145 F.3d 28 (1st Cir. 1998) ............................................................... 20

**Statutes**

29 U.S.C. § 1133 ................................................................................... 17

ERISA .......................................................................................... *passim*

**Other Authorities**

29 C.F.R. § 2560.503-1(b)(5)) .............................................................. 17

29 C.F.R. § 2560.503-1(g)(1)(i) & (j)(1)) ............................................ 18

29 C.F.R. § 2560.503-1(g)(1)(iii)) .................................................. 18, 20

Rule 23(a) ............................................................................................ 10

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

- iii -

MEMORANDUM OF P'S & A'S ISO MOTION
FOR SUMMARY JUDGMENT

# **INTRODUCTION**

Plaintiffs challenge United's denials of their pre-authorization requests for certain upper and lower limb prosthetic devices, and seek certain injunctive and declaratory relief. Specifically, Plaintiffs ask that United be ordered to re-review each and every prosthetics pre-authorization request and post-service claim denied under the "minimum specifications limitation" under revised review procedures, regardless of whether the existing procedures caused the denials.

United respectfully requests that the Court grant summary judgment in its favor on all of Plaintiff's claims, for at least three reasons.

***First,*** the named Plaintiffs' health plans grant United, the claims administrator, sole and exclusive discretion to interpret and apply the plan language, and to make coverage determinations pursuant to that language. This broad grant of discretion means that courts in the Ninth Circuit will not overturn an adverse benefit determination made by United unless Plaintiffs can establish that there was no reasonable basis for United's decision. Plaintiffs cannot do so because United's adverse determinations were based on (i) its reasonable application of industry-specific coding and billing guidance, and (ii) its reasonable conclusion that it is in Plaintiffs' best interests to receive a fully-functional prosthetic device, rather than a partial device that will not work because it is missing critical components. Accordingly, there is no basis for the Court to overturn United's decisions.

***Second,*** United's claims procedures comply with ERISA and its enabling regulations. United provides three levels of independent physician review for each pre-authorization request. The physicians conducting these reviews follow a "Hierarchy of Coverage Review," which requires them to verify eligibility, review the applicable plan language, review the medical records and other information submitted by the member, and review the applicable coverage guidance before reaching a decision on the request. If United reaches an adverse determination, it

//

sends a letter to the member and the applicable provider documenting the reason for the denial and quoting the applicable plan language.

The evidence shows that United completed this process for each of Plaintiffs' requests.  Although Plaintiffs challenge the adequacy of United's communications, the undisputed facts show that United's process substantially complied with ERISA's requirements as interpreted by the Ninth Circuit's precedent.

**Third,** even if Plaintiffs could establish that United committed some procedural violations under ERISA (*e.g.*, issued inadequate letters), there is no evidence that these alleged procedural defects caused the harm alleged in the Complaint – the denial of plan benefits.  This absence of evidence is even more glaring with respect to the absent class members, many of whom could not have been injured by the alleged conduct, or were not injured at all.  Consequently, even if Plaintiffs could prove that United's claim review process is inadequate (and they cannot, because it is not), the undisputed evidence still would demonstrate that the alleged wrongful conduct did not cause the alleged harm, and that Plaintiffs therefore are not entitled to the relief they seek.

For each of the foregoing reasons, United respectfully requests that the Court grant summary judgment on all of Plaintiffs' claims.

### STATEMENT OF UNCONTROVERTED FACTS

#### A. Plan Administration and Funding

Plaintiffs David Trujillo and Deanna Harden are eligible for certain medical benefits pursuant to health benefit plans offered and funded by their employers. (Statement of Uncontroverted Facts ("SUF") Nos. 1 & 6.)

Plaintiff Trujillo's plan was issued by his employer, Towne Park, LLC (the "Towne Park Plan").  (SUF No. 1.)  The Towne Park Plan states that it is a "self-funded" or "self-insured" plan, that plan contributions are made by Towne Park and its employees, and that plan benefits are paid from Towne Park's assets, not

United's.  (SUF Nos. 2-4.)  United HealthCare Services, Inc. is designated as the Claims Administrator under the Towne Park Plan.  (SUF No. 5.)

Plaintiff Harden's plan was issued by her employer, Raytheon (the "Raytheon Plan").  (SUF No. 6.)  The Raytheon Plan states that it is sponsored by Raytheon, and it is a self-insured plan funded by Raytheon and its employees. (SUF Nos. 7-8.)  UnitedHealthcare Services, Inc. is designated as the Claims Administrator under the Raytheon Plan.  (SUF No. 9.)

**B. The Claims Administrator's Discretion Under Plaintiffs' Plans**

The Towne Park Plan and the Raytheon Plan grant discretion to United, as the Claims Administrator, in interpreting, applying, and making coverage decisions pursuant to the plans' language.  For example, the Towne Park Plan states, "Towne Park, LLC has delegated to UnitedHealthcare the discretion and authority to decide whether a treatment or supply is a Covered Health Service and how the Eligible Expenses will be determined and otherwise covered under the Plan."  (SUF No. 10.)  The Towne Park plan further provides that "Towne Park, LLC and UnitedHealthcare have the sole and exclusive discretion to: Interpret Benefits under the Plan; Interpret the other terms, conditions, limitations and exclusions of the Plan, including this SPD and any Summary of Material Modifications and/or Amendments; [and] Make factual determinations related to the Plan and its Benefits."  (SUF No. 11.)  Towne Park also delegated to United the "sole discretion" to determine which services requested by Towne Park employees are "medically necessary" under the Towne Park Plan.  (SUF No. 12.)  Similarly, the Raytheon Plan delegates to United "the authority to make final decisions with respect to paying claims. . . . [and] full discretionary power to interpret the meaning of the plan provisions and determine all questions arising under a plan, including, but not limited to, eligibility for benefits."  (SUF No. 13.)

//

//

### C. Plan Terms Regarding Prosthetic Devices

Plaintiffs' plans provide coverage for prosthetic devices, among many other medical services.  (SUF Nos. 14 & 16.)  The Towne Park Plan covers, among other things, artificial arms, legs, feet and hands, and includes the following language: "If more than one prosthetic device can meet your functional needs, Benefits are available only for the prosthetic device that meets the minimum specifications for your needs. . . . If you purchase a prosthetic device that exceeds these minimum specifications, the Plan will pay only the amount that it would have paid for the prosthetic that meets the minimum specifications, and you may be responsible for paying any difference in cost."  (SUF No. 15.)  The language of the Raytheon Plan is different than the Towne Park Plan: "If more than one prosthetic device can meet a covered person's functional needs, benefits are available only for the most cost-effective prosthetic device."  (SUF No. 17.)

To be covered under the Towne Park Plan or the Raytheon Plan, the requested device or service must be "medically necessary," as defined in those plans.  (SUF Nos. 18-19.)  Under the Towne Park Plan, the definition of "medically necessary" includes the requirement that the requested device be "not more costly" than an alternative device "that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms."  (Ex. 3 to Skaar Decl., at pp.117-118.)  The Raytheon Plan defines "medically necessary" to include devices that are "supported by evidence based on medical research using valid scientific methods that demonstrate a health benefit from the service, or when none is available, based on nationally accepted standards of care."  (Ex. 5 to Skaar Decl., at pp.60-61.)  In addition, the Raytheon Plan requires that the device has been proven through randomized controlled trials or cohort studies to have a "beneficial effect on health outcomes" and it must be "the most cost-effective" as compared to other available alternatives.  (*Id*.)

//

**D. UHC's Guidelines For Interpreting Benefit Plan Terms.**

To provide "assistance in interpreting UnitedHealthcare benefit plans," United has published a Coverage Determination Guideline ("CDG") entitled, "Prosthetic Devices, Wigs, Specialized, Microprocessor or Myoelectric Limbs." (SUF Nos. 20-22.)  Consistent with the language in Mr. Trujillo's and Ms. Harden's plans, the CDG underscores that a determination of coverage is based on the individual "member's functional abilities."  Potential functional ability is based on the reasonable expectations of the prosthetist [and the] treating physician . . . ." (SUF Nos. 23-24.)

The CDG also recites certain limitations and exclusions.  For example, again tracking the language of certain benefit plans, the CDG states that if "more than one prosthetic device can meet the member's functional needs, benefits are only available for the prosthetic device that meets the minimum specifications for the member's needs."  (SUF No. 25.)

**E. United's Review of Pre-Authorization Requests**

United's review of pre-authorization requests is guided by its "Hierarchy of Coverage Review" (the "Hierarchy"), which is meant to ensure a "transparent and consistent" approach.  (SUF Nos. 29-30.)

Under the Hierarchy, the reviewer first confirms whether the member is eligible for coverage.  (SUF No. 31.)  Then, the reviewer determines whether there are any applicable federal or state mandates regarding coverage, which would take precedence over the plan document and CDG.  (SUF No. 32.)  If there are no such mandates, *the member-specific plan document determines coverage*.  (SUF No. 33.) (emphasis added).  If the plan document contains no express "inclusion or exclusion" regarding the member's specific request, the reviewer refers to the CDG to determine whether the request falls within the scope of the plan.  (SUF No. 34.) The Hierarchy also contains a definition of "Medically Necessary" that mirrors Mr. Trujillo's plan.  (SUF No. 35.)

A pre-authorization request for a prosthetic device typically includes a "Detailed Written Order" ("DWO") prepared by the prosthetist and signed by the treating physician.  (*See* Ex. 27 to Skaar Decl.)  The DWO lists the products and services that are being requested, each with a corresponding code that, in the field of prosthetics, usually includes an "L" followed by a four-digit code (an "L-Code"). (*See id.*)  A DWO for a common lower limb device could include between ten and twenty L-Codes, each corresponding to the various components of the device.  (*See* Ex. 15 to Skaar Decl., at ¶ 26.)  A complex component, such as a microprocessor knee, could have multiple L-Codes representing just one component.  (*Id.*)

For example, one of the DWOs prepared for Mr. Trujillo included thirteen L-Codes, including the following:  L5301; L5620; L5629; L5940; L5647; L5910; L5679; L5685; L5986; L5987; and three L5999 codes.  (*See* Ex. 27 to Skaar Decl.) The L5999 code is designated as "lower extremity prosthesis, not otherwise specified."  (*See* Ex. 15 to Skaar Decl., ¶ 28.)  Its upper extremity counterpart is the L7499 code.  (*Id.*)  The L5999 and L7499 codes are sometimes called "miscellaneous" or "write-in" codes.

When a Medical Director reviews a request for a prosthesis, he or she reviews each L-Code in the request, pursuant to the Hierarchy, the CDG, and CMS approved guidance known as the Pricing, Data and Coding ("PDAC") guidance[1] for Durable Medical Equipment, Prosthetics, Orthotics and Supplies ("DMEPOS"). (SUF No. 38.)

Using this guidance, the reviewer determines whether each L-Code in the request is covered on a case-by-case basis, depending on the member's specific plan language and the unique information and medical records submitted by each member.  (SUF No. 38.)  If not all the requested HCPCS codes are covered, but the remaining covered codes constitute a complete functional prosthetic, the reviewer

---

[1]     PDAC guidance is published by an entity that contracts with Medicare to evaluate and assign appropriate L-Codes to new and existing prosthetic devices. (SUF Nos. 36-37.)

1   can make a "split decision" and approve the requested device.  (SUF No. 39.)

2   However, if the non-covered codes include an essential component (e.g., a socket),

3   and the remaining codes constitute an incomplete device, the reviewer denies the

4   request, because it is United's practice to approve only a complete device.  (SUF

5   No. 40.)

6       When United issues an adverse coverage decision letter, the letter quotes the

7   applicable plan language, states the reason for the denial, and makes clear that the

8   member can have his or her physician contact United to discuss the request with the

9   Medical Director or other clinical reviewer, which is known as a "peer-to-peer."

10  (SUF Nos. 41-45.)  The letters also advise that the member can access the

11  information United relied upon to make its determination, the member can appeal

12  the decision within 180 days, or the member can accept the result.  (SUF Nos. 46-

13  49.)

14      United provides two levels of internal appeals, meaning that each denied pre-

15  authorization request or post-service claim is reviewed by at least two physicians.

16  (Ex. 3 to Skaar Decl., at pp.82-83; Ex. 5 to Skaar Decl., at pp.310-311.)  After the

17  member exhausts United's internal appeals, members under some plans also have

18  the right to request an external review within four months of the original adverse

19  determination.  (Ex. 3 to Skaar Decl., at pp.84-85; Ex. 5 to Skaar Decl., at pp.313-

20  314.)

21  **F. Plaintiffs' Pre-authorization Requests for Prosthetic Devices**

22      **1. David Trujillo**

23      Mr. Trujillo is a lower extremity amputee who sought coverage for a

24  microprocessor-controlled prosthesis.  Coverage for "microprocessor limbs [is]

25  based on a member's current functional capabilities and his/her expected functional

26  rehabilitation potential" (SUF No. 51.), as indicated by the member's "Lower Limb

27  Rehabilitation Classification Level" (or "K-Level").  (SUF No. 52.)  The CDG lists

28  //

certain device types, each designated by an L-Code, for which the member must have a certain K-Level in order to obtain coverage.  (SUF No. 53.)

Mr. Trujillo's prosthetist determined that he is a K-3 ambulator.  (SUF No. 54.)  At that level, the CDG lists seven L-codes for prosthetic feet, 19 L-codes for prosthetic knees, and four L-codes for prosthetic ankles that may be appropriate for Mr. Trujillo, several of which are microprocessor-controlled.  (*See* Ex. 10 to Skaar Decl.)

Mr. Trujillo's case was reviewed independently by three licensed physicians at United.  The initial reviewer, Dr. Jeanette McDaniel, relied upon the materials submitted by Mr. Trujillo, the Towne Park Plan, and the CDG, which Dr. McDaniel interprets to mean that coverage is available for a device that would enable the member to return as closely as possible to his pre-amputation activity level.  (SUF Nos. 55-59.)  Dr. McDaniel denied the request because she determined that the requested socket was not coded correctly pursuant to the applicable PDAC guidelines.  (SUF No. 60.)  Dr. McDaniel's letter to Mr. Trujillo cites the "medically necessary" provision of the Towne Park Plan, and explains that while the "benefit document will cover the most basic artificial leg which can meet your needs," the requested leg "may not be the most basic."  (SUF No. 43.)  The letter provides a phone number for Mr. Trujillo's physician to call, and it advises Mr. Trujillo of his rights to request information or appeal United's decision.  (SUF Nos. 45-49.)

Mr. Trujillo appealed the decision.  On appeal, Dr. Gale Browning independently reviewed Mr. Trujillo's case and upheld the denial because it was improper for the provider to include the L5999 codes in the request for Mr. Trujillo's socket.  (SUF Nos. 62-64.)  Dr. Browning's letter to Mr. Trujillo cites the "medically necessary" provision, and explains, "The vendor has asked for a Hi-Fidelity socket.  Your health plan covers the most basic device that meets your needs.  This request is not the most basic device."  (SUF No. 44.)  Mr. Trujillo then

1    appealed again, and Dr. Trinh Tran again upheld the denial because she identified

2    the same problems with how the request was coded as Dr. Browning had, and also

3    because she determined that there was insufficient information to support a

4    conclusion that the requested "HiFi" socket would be superior to a well-fitted

5    traditional socket (i.e., the requested socket exceeded the "minimum specifications"

6    to meet Mr. Trujillo's needs).  (SUF Nos. 65-68.)  There is no indication that Mr.

7    Trujillo sought an external review.

8                   **2.  Deanna Harden**

9         Ms. Harden's son, Logan Harden, has a congenitally missing right forearm

10   and hand.  Ms. Harden sought coverage for a myoelectric prosthesis.  Dr. Arvin

11   Gallanosa, the physician who conducted the initial review of Ms. Harden's request,

12   relied upon the Raytheon Plan, the CDG, and the applicable clinical records.  (SUF

13   Nos. 69-70.)  Dr. Gallanosa denied the request because he concluded that some of

14   the requested L7499 codes were miscoded, and some of them were related to

15   components that were already included in other codes that were requested, which he

16   determined to be contrary to the applicable PDAC guidance.  (SUF No. 71.)  Dr.

17   Gallanosa's letter to Ms. Harden cites the "most cost-effective" plan language, and

18   explains, "Your health plan covers artificial arms that meet the minimum

19   specifications for your child's needs.  The artificial arm requested exceeds the

20   benefit provided under your health plan."  (SUF No. 41.)

21        Dr. Tran handled Ms. Harden's first appeal.  After independently reviewing

22   the case, Dr. Tran upheld the denial because the request included several L7499

23   codes that were improperly included with the requested myoelectric hand, such as

24   an extended warranty (which is not covered by United), a separate request for a

25   battery (a battery is already included as part of the other requested components), a

26   prosthetic donning interface (which has its own assigned code), and a proportional

27   control for the microprocessor (which was unbundled from the microprocessor).

28   (SUF Nos. 73-74.)

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 9 -                    MEMORANDUM OF P'S & A'S ISO MOTION
                        FOR SUMMARY JUDGMENT

Ms. Harden appealed again, and Dr. Browning handled the second-level appeal.  Dr. Browning upheld the denial after concluding that some of the L7499 codes that were submitted represented "unbundling."  In simplistic terms "unbundling" means that Ms. Harden's prosthetist improperly was seeking to bill higher amounts by separately billing amounts that actually were meant to be billed together, meaning they were part and parcel of other codes that were submitted and could be approved.  Dr. Browning also determined that there was insufficient evidence to establish that a more basic body-powered device would not meet Logan Harden's needs.  (SUF Nos. 75-78.)  Dr. Browning's letter explains, "The requested prosthesis includes many features that exceed Logan's basic needs.  Per your health plan, benefits are available for the most cost-effective prosthesis that would meet Logan's needs. . . . A request for a prosthesis that meets Logan's needs and your health plan guidelines can be reviewed if submitted."  (SUF No. 42.)  All United correspondence includes a full explanation of the member's options in light of the denial.  (SUF Nos. 45-49.)

### G. Brief Procedural History

On December 27, 2017, Plaintiffs filed the Complaint in this action, asserting claims against United for (1) improper denial of plan benefits and for a clarification of rights under ERISA; and (2) breach of fiduciary duty and equitable relief under ERISA.  (ECF No. 1.)  The Complaint seeks unpaid benefits and various forms of equitable relief.  (*Id.*)  On August 8, 2018, Plaintiffs filed a motion for class certification.  (ECF No. 66.)  United opposed the motion.  (ECF No. 68.)  On September 14, 2018, the Court denied Plaintiffs' motion without prejudice, because Plaintiffs had failed to define a class that could satisfy the commonality and typicality requirements of Rule 23(a).  (ECF No. 74.)

On September 24, 2018, Plaintiffs filed the First Amended Complaint, which sought to amend certain allegations regarding United's purported wrongful conduct.  (ECF No. 77.)  Plaintiffs then filed a renewed motion for class certification (ECF

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

MEMORANDUM OF P'S & A'S ISO MOTION
FOR SUMMARY JUDGMENT

No. 80), which the Court denied for failure to comply with the Local Rules. (ECF No. 87.) On December 21, 2018, Plaintiffs filed their second renewed motion for class certification (ECF No. 91), which United again opposed. (ECF No. 92.) On February 4, 2019, the Court granted Plaintiffs' second renewed motion. (ECF No. 100.) United has petitioned the Ninth Circuit for permission to appeal the order granting class certification, and this petition is currently pending.

## DISCUSSION

### A. Summary Judgment Legal Standard

"Summary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Santiago v. Lockheed Martin Retirement Plan for Certain Hourly Employees*, 2010 WL 11507587 at *6 (C.D. Cal. Mar. 10, 2010) (citing Fed. R. Civ. Proc. 56(c)). "Thus, when addressing a motion for summary judgment, this Court must decide whether there exist 'any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

"Where there is no evidence demonstrating the existence of a genuine issue of material fact, the moving defendant may prevail simply by 'pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Because the present case implicates a denial of benefits under an ERISA-subject plan, summary judgment for the Plan is proper if, under the applicable ERISA standard of review, the Court finds the claim administrator's decision should be upheld." *Id.*

//

## B. United's Coverage Determinations Should Be Upheld

While Plaintiffs have scuttled their attempt to represent a nationwide class in pursuit of ERISA benefits, their individual claims for such relief persist.[2]  However, these claims must fail as a matter of law, because the undisputed evidence shows that United did not abuse its discretion when it denied Plaintiffs' preauthorization requests, and there is insufficient evidence to support any contention that United abused its discretion concerning any other class members' requests.  Since United did not abuse its discretion in denying Plaintiffs' preauthorization requests, there is no basis upon which the Court can grant the injunctive relief that Plaintiffs seek.

### 1.  United's Coverage Determinations Are Reviewed For Abuse Of Discretion

Under the terms of Plaintiffs' health benefit plans, United is granted discretion to interpret and apply the plans.  The Towne Park Plan delegates to United "the discretion and authority to decide whether a treatment or supply is a Covered Health Service and how the Eligible Expenses will be determined and otherwise covered under the Plan."  (SUF No. 10.)  Likewise, UHC maintains the "sole discretion" to determine which services are medically necessary.  (SUF No. 12.)  Similarly, the Raytheon Plan grants United "the authority to make final decisions with respect to paying claims. . . . [and the] full discretionary power to interpret the meaning of the plan provisions and determine all questions arising under a plan, including, but not limited to, eligibility for benefits."  (SUF No. 13.)

Based on this language that unambiguously grants discretion to United, United's denials of Plaintiffs' pre-authorization requests will be upheld unless Plaintiffs can show that United abused its discretion, i.e., its decisions were

//

---

[2]     In its certification order, the Court stated, "In Plaintiffs' first claim for relief, Plaintiffs allege that they 'seek the payment of medical expenses' on behalf of the class.  Plaintiffs, however, have represented that they do not seek damages **on behalf of the class**.  Accordingly, Plaintiffs will be precluded from seeking such relief **on behalf of the class**."  (ECF No. 100 at p. 11.) (emphasis added).

arbitrary and capricious.  *Santiago*, 2010 WL 11507587 at *6 (C.D. Cal. Mar. 10, 2010); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Under this abuse of discretion standard, Plaintiffs' claims based on the denial of benefits must fail if United's decisions were grounded on "***any reasonable basis***."[3]  *Id.* (citing *Sznewajs v. U.S. Bancorp Amended & Restated Supp. Benefits Plan*, 572 F.3d 727, 734-35 (9th Cir. 2009)); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (emphasis in original); *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) ("In the ERISA context, even decisions directly contrary to the evidence in the record do not necessarily amount to an abuse of discretion.").  "An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact."  *Boyd*, 410 F.3d at 1178; *Montour*, 588 F.3d at 630 (The administrator must "not construe the language of the plan unreasonably or render its decision without explanation").

To disturb the administrator's decision, the court must be "left with a definite and firm conviction that a mistake has been committed."  *Boyd*, 410 F.3d at 1179.

---

[3]    During the parties' meet and confer regarding this motion, Plaintiffs took the position that the Court should review United's benefit denials *de novo*, rather than under an abuse of discretion standard.  However, the Ninth Circuit has held that the applicable standard of review is based on the plan language.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) ("[I]f the plan *does* confer discretionary authority as a matter of contractual agreement, then the standard of review shifts to an abuse of discretion.").  This remains true even if there is a conflict of interest (there is none here).  *Id.* at 966 ("Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest.").  And it remains true even if the administrator violates ERISA's procedural requirements, unless the violation is "flagrant," "wholesale," and causes "substantive harm."  *Id.* at 971.  The Ninth Circuit has described this as a "rare class of cases," such as where the administrator keeps policy details secret and offers no claims procedure whatsoever.  *Id.* (citing *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984)).  There is no evidence that this case should fall within that "rare class" of egregious cases.  At best, if the Court were to somehow find a conflict of interest or procedural violations, it could weigh these matters in deciding whether there was an abuse of discretion.  *Id.* at 972.

- 13 -

MEMORANDUM OF P'S & A'S ISO MOTION
FOR SUMMARY JUDGMENT

However, the court does not merely substitute its view for the administrator's. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 969 (9th Cir. 2006). Rather, the court must examine whether the administrator's decision was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.*

### 2. United Did Not Abuse Its Discretion

Plaintiffs cannot establish that United abused its discretion. Notably, although Plaintiffs demand "the payment of medical expenses" (ECF No. 77 at ¶ 64), the FAC is devoid of any allegation that the devices requested by Plaintiffs actually were covered by their plans. Significantly, although the FAC alleges that the requests were "improperly denied" (*id.* at ¶ 1), this is not because Plaintiffs contend the result was wrong.

Rather than attacking United's ultimate conclusions, the FAC focuses on United's process. In particular, Plaintiffs claim that United denied their claims (i) "without identifying an alternative prosthetic device that meets the member's functional needs," and (ii) based on only "a particular component of the prosthetic device." (*Id.*) However, even if this were true, it would not amount to an abuse of discretion, for at least two reasons.

First, United's alleged failure to identify an alternative device before denying Plaintiffs' requests is irrelevant to Plaintiffs' claims. The undisputed evidence shows that United denied Plaintiffs' pre-authorization requests because of the way in which the requested sockets (the "HiFi socket") were coded by Plaintiffs' providers. (SUF Nos. 60, 64, 67.) The fact that United reviews how requests are coded is no surprise. The prosthetics CDG, a public-facing document published on the internet and elsewhere, advises members and providers that United "has established the PDAC as its definitive source for correct coding and coding clarification." (SUF No. 36.)

//

Here, instead of using the standard PDAC-approved socket codes, Plaintiffs' providers included several L5999 and L7499 codes in their socket assemblies. (SUF Nos. 60, 64, 67.)  After reviewing Plaintiffs' plans, the CDG, and the clinical information submitted, three United medical directors reached the same conclusions: (i) based on PDAC guidance, Plaintiffs' providers had miscoded the sockets, and (ii) there was insufficient information in the record to justify the use of a HiFi socket, rather than a well-fitted traditional socket (which could and should be requested under a standard L-code).  (SUF Nos. 60, 64, 67.)  Whether United identified alternative devices in these reviews is immaterial to the basis for the denials in this case – the coding errors and lack of sufficient supporting documentation.  The problem arose from the documentation and coding presented by Plaintiffs' providers, not from the features of the device itself.[4]

Without doubt, Plaintiffs will argue that the existing PDAC codes are insufficient, that prosthetists have no choice but to use miscellaneous codes to request more advanced and costly features like the HiFi socket, and that United should cover miscellaneous codes.  However, these arguments are undermined by the undisputed data showing that United *does* cover miscellaneous codes when they are properly documented.  (SUF No. 81.)  The fact that United covers such requests also supports the conclusion that the requests in this case were denied for reasons specific to the documentation submitted by Plaintiffs, not because of any process flaw that leads to the blanket denial of miscellaneous codes.

---

[4]    With respect to Logan Harden's request for a myoelectric device, United's reviewers were also concerned with whether a body-powered device could meet the member's needs, in lieu of the requested device.  The CDG provides that a myoelectric upper limb will not be covered unless, among other things, "[a] standard passive or body-powered Prosthetic Device cannot be used or is insufficient to meet the functional needs of the individual in performing activities of daily living (ADL's); and the medical records must indicate the specific need for the technological or design features."  (SUF No. 84.)  In reviewing Logan Harden's request, United's medical directors considered the availability of body-powered limbs, and found that there was insufficient information in the record to demonstrate that a body-powered device could not meet Logan Harden's functional needs.  (SUF No. 78.)

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 15 -

MEMORANDUM OF P'S & A'S ISO MOTION
FOR SUMMARY JUDGMENT

Second, United's practice of denying an entire request based on one non-covered component is well-reasoned, not an abuse of discretion.  United's medical directors have consistently explained the basis for this approach.  When a member submits a request for a complete prosthetic limb, United will not approve less than a fully-functioning device.  (SUF Nos. 39-40.)  In other words, United would not approve a pylon, ankle, and foot for Mr. Trujillo, but leave him without a socket, because a prosthetic limb cannot function without a socket.  Therefore, if the socket cannot be covered, United would deny the entire request.  However, if the non-covered component is not essential to the functionality of the device, United can render a "split decision" to deny the non-covered component and cover the remaining functional components.  (SUF Nos. 39-40.)

Plaintiffs criticize this approach because, according to Plaintiffs, United should cover as many of the requested components as possible, and the member can resort to the supposedly robust secondary market (e.g., eBay) to pay out-of-pocket for the additional components needed to make the device functional.  However, United's medical directors explained that they do not follow this approach because they do not assume that it is the member's intent to receive an incomplete device and pay out-of-pocket for the remaining components.  (SUF No. 82.)  And simply providing an incomplete and non-functional device without any indication that this is consistent with the member's intent is not considered to be good customer service or in the members' best interest, because it would not fulfill the member's need and request for a complete prosthetic device.  (SUF No. 83.)

None of these decisions was arbitrary, capricious, or illogical.  All of these decisions were grounded in the plain language of the CDG, in industry coding guidelines, and in United's well-reasoned policy of only providing functional devices to its members.

Plaintiffs' belated attempt to second-guess the correctness of these decisions does not undermine or negate the reasonable bases for those decisions, as discussed.

*See Siebert v. Std. Ins. Co. Disability Policy*, 220 F.Supp.2d 1128, 1141 (C.D. Cal. 2002) ("Thus, the issue before the Court is not whether Standard's decision was correct, but whether substantial evidence in the record supports its decision.") (citing *Clark v. Wash. Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993)).

### C. There Is No Basis For Injunctive Relief Based On The Alleged Procedural Defects

Because there was a reasonable basis for United's denial of Plaintiffs' pre-authorization requests and there are no grounds for disturbing the denials, the Court should reject Plaintiffs' prayer for remand and other injunctive relief.  The injunctive relief Plaintiffs request would not change United's determinations.

### 1.  ERISA Claim Review Procedures

Explicit rules govern the appropriate claims procedure under ERISA.  The plan must "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.

In accordance with ERISA, the Secretary of Labor has promulgated detailed regulations that define when a claims procedure will be deemed reasonable.  As is relevant here, an ERISA claims procedure is reasonable if, among other things:

- "The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants" (29 C.F.R. § 2560.503-1(b)(5));

//

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 17 -

MEMORANDUM OF P'S & A'S ISO MOTION
FOR SUMMARY JUDGMENT

- The denial letter sets forth "[t]he specific reason or reasons for the adverse determination" (29 C.F.R. § 2560.503-1(g)(1)(i) & (j)(1)); and

- The denial letter provides "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary" (29 C.F.R. § 2560.503-1(g)(1)(iii)).

"The Ninth Circuit does not require strict compliance with ERISA's procedural requirements." *Finkelstein v. Guardian Life Ins. Co. of America*, 2008 WL 8634992 at *4 (N.D. Cal. Nov. 23, 2008). Rather, substantial compliance is sufficient. *E.g., Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1032 (9th Cir. 2006).

### 2. United Complied With ERISA Claims Procedures

United complied with ERISA's claims procedures. United has enacted procedures and safeguards to ensure that plans are applied correctly and consistently. When reviewing a request for pre-authorization, United's medical directors follow United's "Hierarchy of Coverage Review" (the "Hierarchy"). (SUF Nos. 29-35.) The purpose of the Hierarchy is "to ensure a transparent and consistent approach within UnitedHealthcare." (SUF No. 30.) The reviewer is instructed to (1) confirm the member's eligibility, (2) determine whether any federal, state, or contractual mandates apply to the coverage determination, (3) review and apply the applicable coverage/benefit document (e.g., the Summary Plan Description), and (4) where no explicit inclusion or exclusion is stated in the plan, review and apply the applicable CDG. (SUF Nos. 31-34.) The CDG, in turn, discusses coverage considerations at a much higher level of detail than the plan. In the event of an adverse determination, the member can request an appeal, and the reviewers on appeal apply the same Hierarchy. (SUF No. 85.) United also provides an optional external review. (Ex. 3 to Skaar Decl., at pp.84-85; Ex. 5 to

//

Skaar Decl., at pp.313-314.)  These processes are designed to ensure consistency among reviewers with respect to the applicable plans and CDGs.

Further, United's denial letters adequately state the applicable reason for the denial.  The regulations governing the contents of adverse determination letters are designed to ensure a meaningful dialogue between the claims administrator and the member.  *See, e.g., Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).  The letter must provide enough information to allow a reasonable review on appeal.  *Id.*  It "takes an egregiously cursory denial letter," *Martin v. Aetna Life Ins. Co., 223 F.Supp.3d 973, 983 (C.D. Cal. 2016)*, or an administrator who purposely hides information from the member, *Kochenderfer v. Reliance Std. Life Ins. Co.*, 2009 WL 4722831 at *9 (S.D. Cal. Dec. 4, 2009), to show that the letter constitutes an abuse of discretion.  United's denial letters do not come close to meeting that severe description, and there is no evidence that United was intentionally trying to hide information from Plaintiffs.

To the contrary, each United letter consistently informed Plaintiffs that their requests were being denied because the requested devices, as coded and described by Plaintiffs' prosthetists, exceeded Plaintiffs' apparent "minimum specifications," while quoting the applicable plan and CDG language.  (SUF Nos. 41-44.) Although Plaintiffs may claim that the letters lack clarity, they cannot show that the letters deprived them of an opportunity to have a reasonable dialogue with United, or hindered their ability to appeal or seek judicial review.  *See Kochenderfer*, 2009 WL 4722831 at *9 (letter stating plaintiff "should be capable of working full time in sedentary positions" was not "the pinnacle of clarity," but it satisfied the *Booton* standard); *cf. Harder v. Bristol-Myers Squibb Co. Long Term Disability Plan*, 281 F.Supp.3d 939, 951 (C.D. Cal. 2017) (administrator provided "shifting reasons" for denials).  Indeed, these letters invited Plaintiffs' providers to contact United to further discuss the denials.  (SUF No. 45.)

//

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 19 -

MEMORANDUM OF P'S & A'S ISO MOTION
FOR SUMMARY JUDGMENT

In addition, while United's letters to Plaintiffs did not ask Plaintiffs to submit additional information, they were not required to do so.  The letter must ask for additional information only if such information is necessary to "perfect" the claim.  29 C.F.R. § 2560.503-1(g)(1)(iii).  In this context, "perfecting" the claim is not the same as "winning" the appeal.  *Terry v. Bayer Corp.*, 145 F.3d 28, 30 n.8 (1st Cir. 1998) ("'Perfect,' when used in this context, usually means 'to bring to completion.'  Thus, a complete claim is not necessarily the same as a successful claim because even a complete claim can be denied.").  Since United had sufficient information to make a decision regarding Plaintiffs' requests, it was not necessary to ask for more.  For the same reasons, ERISA does not require United's denial letters to advise members of the L-codes that could be resubmitted and approved.  To the extent a claim must be "perfected," the member must submit additional information to support the existing claim, not revamp the substance of the benefit sought.

For all of these reasons, United has, at a minimum, substantially complied with ERISA's procedural requirements.

### 3. The Alleged Procedural Violations Would Not Entitle Plaintiffs To Relief

Even if Plaintiffs could show that United committed a procedural violation under ERISA (and they cannot), they would not be entitled to the relief they seek.  ERISA's procedural requirements do not create a system of strict liability.  *Terry v. Bayer Corp.*, 145 F.3d 28, 29 (1st Cir. 1998).  "[O]rdinarily, a claimant who suffers because of a fiduciary's failure to comply with ERISA's procedural requirements is entitled to no substantive remedy."  *Parker v. BankAmerica Corp.*, 50 F.3d 757, 768 (9th Cir. 1995) (quoting *Blau v. Del Monte Corp.*, 748 F.3d 1348, 1353 (9th Cir. 1984)).  Rather, Plaintiffs must show that they were harmed by the procedural violation.  *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1307-1308 (9th Cir. 1986) (affirming summary judgment for the plan);

- 20 -

*Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985) (affirming judgment for the employer).  If they cannot do so, summary judgment for the defendants is appropriate.  *See Krishan v. McDonnell Douglas Corp.*, 873 F.Supp. 345, 354-55 (C.D. Cal. 1994) ("[T]he Ninth Circuit has affirmed summary judgment for defendants where the plaintiffs failed to show any substantive harm resulting from procedural violations.").

Accordingly, where the plaintiffs' requests were properly denied, Courts refuse to remand claims for re-review based solely on a procedural defect. *Hancock*, 787 F.2d at 1308; *Ellenburg*, 763 F.2d at 1096 ("With the district court's findings of fact regarding Ellenburg's ineligibility for early retirement benefits and his bad faith in applying for such benefits, Ellenburg is not entitled to a substantive remedy and no remand is necessary . . ."); *Parker v. BankAmerica Corp.*, 50 F.3d 757, 769 (9th Cir. 1995) ("The former employees were not entitled to receive benefits under the MTP.  Therefore, they did not suffer a substantive harm" from the procedural defect").  Indeed, in each of the foregoing cases, the Ninth Circuit affirmed summary judgment for defendants despite the presence of certain procedural defects.  This rule makes practical sense, because it would serve no purpose to remand 1,000+ claims to an administrator to reprocess under a different procedure, only to reach the same results.

Here, Plaintiffs have not shown that the alleged procedural defects had any impact on the outcome of United's benefit determinations.  Plaintiffs argue that United's denial letters failed to adequately state the reasons for the denials, but Courts have consistently held that it is inappropriate to remand claims based on inadequate letter language.  *Hancock*, 787 F.2d at 1308 ("Because there was substantial evidence to support the Trust's decision, a remand merely to require the Trust to send a more detailed letter 'would be a useless formality,' accomplishing nothing"); *Barnes v. AT&T Pension Ben. Plan—Nonbargaines Prog.*, 2012 WL 1657054 at *4-6 (N.D. Cal. May 10, 2012) ("[A] remand here seems essentially

pointless because it is now clear – if only through this litigation – that § 3.4(a) is the provision upon which the Defendant Plan relied.") (granting summary judgment for plaintiff but awarding no relief). The *Hancock* Court's reasoning holds true here, where the only alleged substantive harm is the denial of claims, and there is no evidence that Plaintiffs would have done anything differently, or that the outcome would have changed, had United's letters been written with greater specificity.

To further illustrate the point with respect to the absent class members, members in at least the following categories were either not injured by the alleged wrongful conduct, or not injured at all:

- Members whose requests were denied under the Minimum Specifications Limitation, correctly and consistently with the terms of their plans[5];

- Members whose requests were denied under the Minimum Specifications Limitation, where the denials were overturned on appeal;

- Members whose requests were denied under the Minimum Specifications Limitation, who then resubmitted a request for the same device with different or additional documentation and were approved;

- Members whose requests were denied under the Minimum Specifications Limitation, who then resubmitted a request for a different device and were approved;

- Members whose requests were denied under the Minimum Specifications Limitation, who engaged in United's peer-to-peer process and gained a full understanding of the reasons why their requests were denied; and

---

[5] Plaintiffs presented evidence regarding the varying language of the named Plaintiffs' plans (*see* ECF No. 91-6 at 1 & 20), but they have not adduced evidence that this plan language applies to all class members, citing only their own FAC for this proposition in a recent submission. (ECF No. 91 at 1:11-14.)

- Members whose requests for a single component (not a complete device) were denied under the Minimum Specifications Limitation, so there was no question regarding which component was not covered.

Like the named Plaintiffs, these absent class members who have suffered no harm cannot be entitled to any substantive relief based on the alleged procedural defects. This is yet another basis for granting Defendants' motion.

## CONCLUSION

For the foregoing reasons, and based on the undisputed facts provided with this motion, United respectfully requests that the Court find, as a matter of law, that: (1) United did not abuse its discretion in denying Plaintiffs' pre-authorization requests; (2) United's claims review process substantially complies with ERISA; and (3) even if there were procedural defects in United's communications with Plaintiffs, Plaintiffs suffered no resulting harm. Based on these findings, United further requests that the Court enter judgment in favor of United and dismiss this case with prejudice.

March 4, 2019                           HOGAN LOVELLS US LLP


                                        /S/ David W. Skaar
                                        Michael M. Maddigan
                                        David W. Skaar
                                        Harmony Gbe

                                        Attorneys for Defendants
                                        UNITEDHEALTH GROUP, INC.;
                                        UNITED HEALTHCARE SERVICES,
                                        INC.; UNITEDHEALTHCARE
                                        INSURANCE COMPANY