ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, California 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

CONAL DOYLE, #227554
STEPHEN BEKE, #290972
DOYLE LAW
9401 Wilshire Blvd., Suite 608
Beverly Hills, California 90212
Tel: (310) 385-0567; Fax (310) 943-1780
conal@conaldoylelaw.com
sbeke@conaldoylelaw.com

Attorneys for Plaintiffs, DAVID TRUJILLO,
DEANNA HARDEN, on behalf of themselves
and all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TRUJILLO; DEANNA HARDEN; on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>      v.<br><br>UNITEDHEALTH GROUP INC.; UNITED HEALTHCARE SERVICES, INC.; UNITEDHEALTHCARE INSURANCE COMPANY;<br><br>           Defendants. | Case No.: 5:17-cv-2547- JFW (KKx)<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 2, 2019<br>Time: 1:30 p.m.<br>Courtroom: 7A |

1

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

2

**PLEASE TAKE NOTICE** that on December 2, 2019 at 1:30 p.m. in

3

Courtroom 7A of the United States District Court for the Central District of

4

California, located at 350 West First Street, Los Angeles, CA 90012, Plaintiffs will

5

move the Court under Rules 23(h) and 54(d)(2) of the Federal Rules of Civil

6

Procedure, and 29 U.S.C. section 1132(g)(1), for an order: (1) finding that the Class

7

Notice has been adequate and reasonable, met the requirements of Rule 23, and has

8

constituted the best notice practicable under the circumstances; (2) granting final

9

approval of the proposed class action Settlement; and (3) directing entry of Final

10

Judgment, dismissing the action (including all individual and class claims presented

11

thereby) on the merits with prejudice.

12

This Motion is based on this Notice of Motion and Motion, the attached

13

memorandum of points and authorities in support thereof, and the Declaration of Julie

14

Swanson Re: Mailing of Notices of Proposed Settlement of Class Action and Final

15

Approval Hearing. This Motion is also based on Plaintiffs' Motion for Approval of

16

Attorneys' Fees and Class Representative Service Awards ("Fee Motion"), filed

17

August 22, 2019; the declarations and exhibits submitted in support of the Fee

18

Motion; the entire record in this proceeding, including but not limited to the

19

Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and the

20

declarations and exhibits in support thereof; the Court's findings and conclusions

21

contained in its Preliminary Approval Order; the Court's files and records in this

22

matter; and upon such other matters as may be presented at the time of the hearing.

23

DATED: November 1, 2019                              GIANELLI & MORRIS
                                                     DOYLE LAW

24

25

                                             By:___/s/ Adrian J. Barrio_____
26
                                                 ROBERT S. GIANELLI
                                                 JOSHUA S. DAVIS
27                                               ADRIAN J. BARRIO
                                                 Attorneys for Plaintiffs

28

1

# TABLE OF CONTENTS

*Pages*

MEMORANDUM OF POINTS AND AUTHORITIES……………………….. 1

II.   INTRODUCTION……………………………………………………….. 1

II.   SUMMARY OF THE LITIGATION………………………………… 2

III.  THE SETTLEMENT SHOULD BE FINALLY APPROVED……….. 2

    A.   The Class Notice was adequate and effective………………….. 3

        1.   The Administrator has provided the best practicable
            notice of the settlement to the Class Members in the
            manner directed by this Court………………………………… 3

        2.   The Class Notice adequately informed Class Members
            of the Settlement………………………………………………… 4

    B.   The Settlement is fundamentally fair, adequate and reasonable.. 5

        1.   Strength of the Class Claims……………………………….. 5

        2.   Risk and expense of further litigation…………………….. 7

        3.   Risk of maintaining class action status through trial……. 7

        4.   Amount and benefits of the Settlement…………………..  8

        5.   Extent of discovery and state of proceedings, including
            the absence of collusion………………………………………. 9

        6.   Experience and views of counsel…………………………11

        7.   The reaction of the Class has been overwhelmingly
            positive and strongly supports approval…………………11

    C.   All CAFA requirements have been or will be satisfied by
        the date of the Final Approval Hearing………………………… 12

IV.  CONCLUSION………………………………………………………...13

# TABLE OF AUTHORITIES

*Pages*

*Bayat v. Bank of the West*
　　No. C–13–2376 EMC, 2015 WL 1744342
　　(N.D.Cal. April 15, 2015))…………………………………………..8

*Churchill Village, LLC v. General Electric*
　　361 F.3d 566 (9th Cir. 2004)………………………………………. 4

*Class Pls. v. City of Seattle*
　　955 F.2d 1268 (9th Cir. 1992)……………………………………… 5

*Davis v. City & Cnty. of San Francisco*
　　890 F.2d 1438 (9th Cir.1989)……………………………………… 5

*Hanlon v. Chrysler Corp.*
　　150 F.3d 1011 (9th Cir. 1998)…………………………………… 8, 11

*In re Integra Realty Res., Inc.*
　　262 F.3d 1089 (10th Cir. 2001)………………………………….. 4

*In re Mego Financial Corp. Securities Litigation*
　　213 F.3d 454 (9th Cir. 2000)…………………………………….. 5

*In re Pac. Enters. Sec. Litig.*
　　47 F.3d 373 (9th Cir. 1995)…………………………………….... 11

*In re Syncor ERISA Lit*igation
　　516 F.3d 1095 (9th Cir. 2008)…………………………………... 2

*In re TOYS "R" US-DELAWARE, INC.*
　　295 F.R.D. 438 (C.D. Cal. 2014)………………………………… 11

*In re Pacific Enterprises Securities Litig.*
　　47 F.3d 373 (9th Cir. 1995)………………………………………11

*Lane v. Brown*
　　166 F.Supp.3d 1180 (D. Or. 2016)………………………… 7, 8, 9

1

**TABLE OF AUTHORITIES**

*Pages*

2

3    *Monterrubio v. Best Buy Stores, LP.*
4        291 F.R.D. 443 (E.D. Cal. 2013)…………………………………… 3

5    *Mullane v. Cent. Hanover Bank & Trust Co.*
6        339 U.S. 306 (1950))………………………………………………….. 3

7    *Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*
8        221 F.R.D. 523 (C.D. Cal. 2004)………………………………… 2, 5

9    *Officers for Justice v. Civil Serv. Comm'n*
10        688 F.2d 615 (9th Cir. 1982)…………………………………....3, 5

11    *Rodriguez v. West Publishing Corp.*
12        563 F.3d 948 (9th Cir. 2009)……………………………………...10

13    *Ross v. A.H. Robins*
14        700 F.Supp. 682 (S.D.N.Y. 1988)……………………………..12

15    *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term*
      *Disability Income Plan*
16        85 F.3d 455 (9th Cir. 1996)……………………………………….9

17
18    *Schleibaum v. Kmart Corp.*
        153 F.3d 496 (7th Cir. 1998)……………………………….. 9

19
20    *Torrisi v. Tucson Elec. Power Co.*
        8 F.3d 1370 (9th Cir.1993)……………………………………….5

21

22    ///

23    ///

24    ///

25

26

27

28

# TABLE OF AUTHORITIES

*Pages*

***Statutes***

Employee Retirement Income Security Act………………………………….2, 7, 9

Code of Federal Regulations
      Title 29
      2560.503-1……………………………………………………….. 7

Federal Rules of Civil Procedure
      Rule 23………………………………………………………… ***passim***

United States Code

      Title 29
           § 1133……………………………………………………...7
           § 1715(b)…………………………………………………..12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On July 19, 2019, the Court preliminarily approved the Settlement Agreement ("the Settlement") between Plaintiffs David Trujillo and Deanna Harden (collectively, "Plaintiffs"), on the one hand, and Defendants UnitedHealth Group Incorporated ("UHG"), United HealthCare Services, Inc. ("UHS"), and United Healthcare Insurance Company ("UHIC") (collectively, "United"), on the other, finding it fair, adequate, reasonable, and within the realm of possible final approval. (Dkt. 193.) Nothing has occurred since then to deviate from that finding.

Plaintiffs respectfully request the Court to finally approve the Settlement, which provides substantially all of the relief requested in the pleadings. The Settlement requires United to enact a number of procedural changes (i.e., "business process changes") which will fundamentally alter the way United handles member prostheses claims. Going forward, United will: (1) identify an alternative device in its adverse determination letters when denying a prosthetic device under the Minimum Specifications Limitation; and (2) identify which components parts of a device were denied and which were approved, so that members can pay out-of-pocket for more expensive denied components. The Settlement also affords retrospective injunctive relief, requiring United to reprocess the class members' denied claims using the newly enacted business process changes.

The parties reached this Settlement after extensive, arms-length negotiations, which followed years of hard-fought law and motion battles over the critical issue of class certification. Through these numerous battles, discovery and investigation, and the parties' mediation efforts, the parties were made aware of the strengths and weaknesses of the claims and defenses and well positioned to assess the fairness, adequacy, and reasonableness of the Settlement against the risks and uncertainties of continued litigation.

///

1

As required by the relevant Ninth Circuit authority and Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement is fundamentally fair, adequate and reasonable. Further, the Class Notice has satisfied Rule 23(c)(2)(B) and (e)(B), and has provided the best notice practicable under the circumstances. Accordingly, the Court should issue a final order and judgment certifying the Class and granting final approval of the Settlement.

## II.     SUMMARY OF THE LITIGATION

For a history of the litigation, summary of the settlement negotiations, and a discussion of the settlement terms, see Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, the supporting declaration of Class Counsel to that motion, and Plaintiffs' Motion for Approval of Attorneys' Fees and Class Representative Service Award (Fee Motion). (Dkt. 189 at pp. 6-15; Dkt. 189-1 at ¶¶ 6-24; Dkt. 194 at pp. 7-15.)[1]

## III.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

Rule 23(e)(1)(A) requires that the "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Approval under Rule 23 involves a two-step process "in which the [c]ourt first determines whether a proposed class action deserves preliminary approval and then, after notice is given to the class members, whether final approval is warranted." *Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.14, at 236-37 (1995). The Ninth Circuit has noted that, in considering whether to finally approve a settlement, "there is a strong judicial policy that favors settlements, particularly where class action litigation is concerned." *In re Syncor ERISA*

---

[1] Page references for documents filed and appearing on the Court's docket are to the pagination at the top of the document automatically provided by the federal courts' Case Management/Electronic Case Files (CM/ECF) system upon electronic filing of the document.

2

*Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation.") *cert denied*, 495 U.S. 1217 (1983).

Here, this Court preliminarily approved the Settlement on July 19, 2019. As explained below, notice has been given to the Class Members in accordance with the Court's directions. The Class Administrator has received zero objections and no requests for exclusion. Nothing has changed which would cause this Court to deviate from its preliminary finding.

**A.      The Class Notice was adequate and effective.**

**1.      The Administrator has provided the best practicable notice of the settlement to the Class Members in the manner directed by this Court.**

Rule 23(e) requires that "notice of the proposed dismissal and compromise [of a class action] shall be given to all members of the class in such a manner as the court directs." Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Monterrubio v. Best Buy Stores, LP.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In its July 19, 2019 Order Preliminarily Approving the Class Settlement, the Court approved the notice provisions in paragraph 11 of the Settlement, and the form of the Class Notice attached to the Settlement as Exhibit A. (Dkt. 193 at p. 3, ¶ 10; p. 4, ¶ 5.) The Court further appointed Kurtzman Carson Consulting LLC ("KCC") as the Settlement Administrator and directed it to mail the Class Notice to the identified Class Members by first-class mail, postage pre-paid, to his or her last known address no later than 34 days after entry of the order. (*Id*. at p. 4, ¶¶ 7, 8.)

Pursuant to the Preliminary Approval Order, the Administrator provided Class Notice to the 827 identified *Trujillo* Class Members by mail, as detailed in the declaration of KCC Senior Consultant Julie Swanson. (Swanson Decl. at ¶¶ 3-5.) As of October 30, 2019, forty-four (44) notices had been returned as undeliverable. (*Id*. at ¶ 6.) However, KCC re-mailed twenty-six (26) Class Notices based on updated addresses through address searches performed by KCC. (*Id*.) Thus, 809 of the 827 class members (97.8%) received the Class Notice. That is more than sufficient to satisfy Rule 23(c). *See, e.g., In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-1118 (10th Cir. 2001) (Rule 23 and due process satisfied where 77% of class members received notice of settlement.).

### 2. The Class Notice adequately informed Class Members of the Settlement.

Notice is satisfactory if it "'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric,* 361 F.3d 566, 575 (9th Cir. 2004). In addition, Rule 23(h)(1) requires that notice of Class Counsel's request for attorneys' fees be "directed to class members in a reasonable manner." The *Trujillo* Class Notice easily satisfies these requirements.

The Class Notice clearly and concisely states in plain, easily understood language the nature of the action, the defined Class, the class claims, issues and defenses, the terms of the Settlement, including attorneys' fees paid to Class Counsel, that a Class Member may object to the Settlement, that the Court will exclude anyone from the *Trujillo* Class who request exclusion, the time and manner for requesting exclusion or objecting to the Settlement, and the binding effect of a class judgment on members under Rule 23(c)(3). (*See* Ex. A to Swanson Decl.) Thus, the Class Notice adequately informed Class Members of the proposed Settlement.

///

4

**B.    The Settlement is fundamentally fair, adequate and reasonable.**

The Ninth Circuit has interpreted Rule 23(e) to require the district court to determine whether a proposed settlement is "fundamentally fair, adequate and reasonable." *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000). To make this determination, courts "may consider some or all of the following factors," including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* In addition, the settlement cannot be the product of collusion among the negotiating parties. *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).

Not all factors will apply to every class action settlement, and certain factors may predominate depending on the nature of the case. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993). "The degree of importance attached to each factor is determined by the nature of the claim, the type of relief sought and the facts and circumstances of each case." *Davis v. City & Cnty. of San Francisco*, 890 F.2d 1438, 1444–45 (9th Cir.1989).

**1.    Strength of the Class Claims.**

A key factor in considering the reasonableness of a settlement "is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.Cal.2004) (internal quotation marks and citation omitted). However, the court's role is not "to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice, supra,* 688 F.2d at 625.

The strength of the class claims in this case weighs decisively in favor of settlement approval. There were two practices at the heart of the case: (1) United's denial of coverage for prosthetics under the Minimum Specifications Limitation without determining and identifying an alternative device that would meet the member's functional needs; and (2) when United concludes that a particular component of a prosthetic device is not covered pursuant to the Minimum Specifications Limitation, it denies coverage for the entire device without specifying whether the other components of the device are covered. Both practices were admitted by United's witnesses. (Dkt. 111-1 at PSUF Nos. 95, 98, 100 and supporting evidence.)

United's systemic failure to determine and identify an alternative device violated the terms of Plaintiffs' plans and United's own internal guidelines. The Minimum Specifications Limitation states: "If more than one prosthetic device can meet your functional needs, Benefits are available only for the prosthetic device that meets the minimum specifications for your needs." (*Id*. at PSUF No. 87 and supporting evidence.) Moreover, in its coverage guidelines, United instructs its claim reviewers to apply the Minimum Specifications Limitation "[i]f more than one prosthetic device can meet the member's functional needs[.]" (*Id*. at PSUF No. 93 and supporting evidence.) "But first, the primary review is to ensure that the member is getting a device that meets their foundational needs." (*Id*. at PSUF No. 94 and supporting evidence.)

With respect to the second practice, United asserted that denying all components is necessary when a "fully functional" device could not be delivered. But the only support for United's position was the testimony of its own medical reviewer, who expressed what appeared to be her personal *opinion* that she did not see the benefit of approving components that do not provide a "fully functioning" device. (Dkt. 107-2 at SUF Nos. 39, 40, 82 and 83.) United was unable to cite to any industry standard or other reason to support its position.

United's conduct independently violated ERISA claim regulations. ERISA's claim and notice regulations required United to identify the minimum benefits to which Plaintiffs were entitled to "meet[ ] their foundational needs," i.e., a suitable alternative device. (Dkt. 91-6 at 191.) The failure to identify a suitable alternative device plainly compromised Plaintiffs' and the class members' rights to "adequate notice" and to a "full and fair review" of their claims. 29 U.S.C. § 1133. *See also* 29 C.F.R. 2560.503-1(g)(1)(i), (g)(1)(iii), and (j)(1).

Likewise, United's blanket denial of a device when it has only disagreed with one, two, or three of the components, as occurred on Plaintiffs' claims, violates ERISA claim regulations and the review process. "[I]f a claim is ***wholly or partially denied***, the plan administrator ***shall notify*** the claimant, in accordance with paragraph (g) of this section, of the plan's adverse benefit determination[.]" 29 C.F.R. § 2560.503-1(f)(1), emphasis added.

### 2. Risk and expense of further litigation.

Despite the strength of Plaintiffs' position, had this case not settled, the parties faced an expensive, multi-week trial. Indeed, although the parties "had already incurred significant litigation expenses, the cost of preparing for and handling the trial with a number of expert witnesses on both sides would have been enormous." *Lane v. Brown*, 166 F.Supp.3d 1180, 1189 (D. Or. 2016). Moreover, "no matter who won at trial, an appeal was likely, adding further costs." *Id*. Finally, even if Plaintiffs prevailed, "the precise nature and scope of relief ordered by the court may not have been as comprehensive or detailed as contained in the Agreement and could have taken potentially many more years to implement." *Id*. The risk and expense of further litigation thus weigh in favor of approval. *Id*.

### 3. Risk of maintaining class action status through trial.

The parties' settlement eliminates any risk of decertification and "immunizes the class certification order from attack by [United]." *Lane*, *supra*, 166 F.Supp.3d at 1189. This factor weighs in favor of approval. *Id*.

1      **4.     Amount and benefits of the Settlement.**

2          "[T]he critical component of any settlement is the amount of relief obtained by

3   the class." *Lane*, *supra*, 166 F.Supp.3d at 1189 (quoting *Bayat v. Bank of the West*,

4   No. C–13–2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. April 15, 2015)). A

5   settlement that provides for "comprehensive and substantial" injunctive relief weighs

6   strongly in favor of approval. *Lane*, *supra*, 166 F.3d at 1189 (approving injunctive

7   relief settlement that, among other things, required the State of Oregon to "create and

8   implement a number of policies and practices to facilitate compliance with the

9   [Americans with Disabilities Act of 1990]"). *See also Hanlon v. Chrysler Corp.*, 150

10  F.3d 1011, 1027 (9th Cir. 1998) (approving injunctive relief settlement that

11  "obligate[d]" the defendant to "make [its] minivans safe").

12         To remedy the practices identified *supra* at section III.B.1, Plaintiffs sought

13  an injunction requiring United to: (1) identify an alternative device in its adverse

14  determination letters when denying a prosthetic device under the Minimum

15  Specifications Limitation; (2) identify which components parts of a device were

16  denied and which were approved, so that members can pay out-of-pocket for more

17  expensive denied components; and (3) reprocess the class members' denied claims

18  using the new Court-ordered practices. (Plaintiffs' Trial Brief, Dkt. 137 at 19-20.)

19         The Settlement provides for the very relief requested. To begin with, the

20  Settlement will require United to enact agreed-upon Business Process Changes that

21  are to take effect immediately upon final approval of the Settlement. (Dkt. 189-2,

22  Ex. 1, at p. 7, ¶ 4.) Among other things, these Business Process Changes will

23  require United to identify, on a going forward basis, an alternative component or

24  components in its adverse determination letters when denying a prosthetic device

25  under the Minimum Specifications Limitation. The Business Process Changes will

26  also require United to identify, where applicable, which component parts of a

27  device were denied and which were approved. (Dkt. 189-2, Ex. 1 at p. 7, ¶ 4(a);

28         Dkt. 189-1 at ¶ 10.)

8

In addition to reviewing future requests for prosthetic devices and components under the Business Process Changes, United must re-review the claims of class members whose requests for prosthetic devices and/or components were *previously* denied under the Business Process Changes. (Dkt. 189-2, Ex. 1, at pp. 8-9, ¶¶ 5, 6; Dkt. 189-1 at ¶ 11.) Reprocessing under the correct standard is the *only* appropriate relief under ERISA for class members whose requests for prostheses benefits were denied in violation of the plans' "minimum specifications" provision and/or ERISA claim regulations. *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-461 (9th Cir. 1996) (reprocessing is appropriate injunctive relief for denial of plan benefits when an ERISA administrator violates terms of plan or applies wrong standard in making a benefit determination); *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998) ("Normally, in an action for an inadequate denial letter, the remedy is to remand the case to the administrator for a full and fair hearing of the claim[.]").

Thus, the Settlement provides "comprehensive and substantial" injunctive relief to the Class and weighs strongly in favor of approval. *Lane*, *supra*, 166 F.3d at 1189. It cements a sea change in United's practices for handling and adjudicating member prostheses claims and provides redress for previously denied prostheses claims, accomplishing the fundamental purpose of the subject lawsuits.

### 5. Extent of discovery and state of proceedings, including the absence of collusion.

The extent of discovery completed and the state of the proceedings at the time of settlement is an indicator of whether the parties have a sufficient understanding of each other's cases to make an informed judgment about their likelihood of prevailing. Typically, "[a] court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomm. Coop.*, *supra*, 221 F.R.D. at 527 (internal quotation marks and citation

omitted). For that reason, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Id.* at 528.

This case was settled mere days before the scheduled trial and after the facts and issues relating to United's prostheses practices, and the impact of those practices on Plaintiffs and the class, were fully developed. The parties exchanged thousands of pages of documents during the discovery process. (Dkt. 189-1 at ¶ 16.) Class Counsel engaged in extensive discovery and investigation regarding United's policies and procedures for reviewing and deciding prostheses claims, including its development and application of the Minimum Specifications Limitation; and retained and extensively worked with renowned prostheses experts in assessing the content, breadth and legality of United's procedures. (*Id.* at ¶¶ 16-19.) Class Counsel also extensively prepared for and took the depositions of numerous United employees and doctors, and prepared for and defended the depositions of Plaintiffs' witnesses. (*Id.* at ¶ 16.) Finally, expert discovery was fully completed before the parties reached settlement. (*Id.* at ¶ 17.) No stone was left unturned in examining the strengths and weaknesses of the case.

Moreover, the parties attended two mediations before an experienced mediator. (*Id.* at ¶¶ 20-24.) The negotiations were intense and at arms'-length and ultimately resulted in a settlement that provides the class with substantially all of the relief requested in the Complaint. (*Id.*)

Accordingly, the settlement was reached after the parties achieved "a full understanding of the legal and factual issues surrounding the case," and represents the end-result of an adversarial process where the interests of *Trujillo* Class was vigorously and fully represented by Class Counsel. *Nat'l Rural Telecomm. Coop.*, *supra*, 221 F.R.D. at 527.

"Nor is there any dispute that counsel had considerable experience in litigating … class actions, and other complex litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Plaintiffs and the Classes are represented by

10

1   counsel who have extensive experience in the litigation of insurance class actions

2   and have successfully prosecuted other class actions over policyholders' rights to

3   health benefits. (Dkt. 189-1 at ¶¶ 2-4; Dkt. 194-1 at ¶¶ 2-4.) United is represented by

4   the law firm of Hogan Lovells US LLP, a firm that has expertise in health care

5   matters and that regularly represents United and other health plans.

6       The Ninth Circuit has held that "[p]arties represented by competent counsel

7   are better positioned than courts to produce a settlement that fairly reflects each

8   party's expected outcome in litigation[.]" *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,

9   378 (9th Cir. 1995). Thus, this factor weighs in favor of approval.

10              **6.    Experience and views of counsel.**

11      "The recommendations of plaintiffs' counsel should be given a presumption of

12  reasonableness." *In re TOYS "R" US-DELAWARE, INC.*, 295 F.R.D. 438, 455 (C.D.

13  Cal. 2014). "Parties represented by competent counsel are better positioned than

14  courts to produce a settlement that fairly reflects each party's expected outcome in

15  litigation." *In re Pacific Enterprises, supra,* 47 F.3d at 378.

16      As set forth in the declarations submitted with the Preliminary Approval

17  Motion and Fee Motion, Class Counsel has extensive experience prosecuting

18  insurance class actions, and has represented policyholders in a number of published

19  insurance law decisions. (Dkt. 189-1 at ¶¶ 2-4; Dkt. 194-1 at ¶¶ 2-4.) Class

20  Counsel's belief that the proposed Settlement is fair, adequate and reasonable weighs

21  in favor of approval.

22              **7.    The reaction of the Class has been overwhelmingly positive
23                      and strongly supports approval.**

24      The parties have received zero requests for exclusion and zero objections to

25  the proposed Settlement. (Swanson Decl. at ¶¶ 13, 14.) This is itself strong evidence

26  of the Settlement's fairness. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the

27  overwhelming majority of the class willingly approved the offer and stayed in the

28  class presents at least some objective positive commentary as to its fairness."); *See*

11

*also*, *Ross v. A.H. Robins*, 700 F.Supp. 682, 684 (S.D.N.Y. 1988) ("[T]he absence of objectants may itself be taken as evidencing the fairness of a settlement."). The overwhelmingly positive reaction of the Class Members is strong evidence that the Settlement is fundamentally fair, adequate and reasonable.

### C.   All CAFA requirements have been or will be satisfied by the date of the Final Approval Hearing.

The Class Action Fairness Act of 2005 ("CAFA") requires defendants who settle federal class actions to "serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official...." 28 U.S.C. § 1715(b). As explained in Senate Report 109-14 from the Senate Judiciary Committee, this section "is designed to ensure that a responsible state and/or federal official receives information about proposed class action settlements and is in a position to react if the settlement appears unfair to some or all class members or inconsistent with applicable regulatory policies." S. Rep. No. 109-14, at 32 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3.

Pursuant to the requirements of CAFA, on August 30, 2019, the Class Administrator (KCC) notified "the U.S. Attorney General, the Attorneys General of each of the 50 states in which Class Members reside and the District of Columbia, and Attorneys General for all 5 US Territories" (hereinafter, "the CAFA entities") of the Settlement. (Swanson Decl. at ¶¶ 8, 9; Exs. B, C.) KCC has received no response to the notice of settlement served upon the CAFA entities. (Swanson Decl. at ¶ 11.) CAFA further provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)." 28 U.S.C. § 1715(d). Based on the August 30, 2019 service date, above, the 90-day CAFA notice period will expire on November 28, 2019.

On October 15, 2019, this Court continued the Final Approval Hearing Date to December 2, 2019, thus ensuring that the hearing will be held after the expiration of the 90-day CAFA notice period. (Dkt. 197.) As part of its order, the Court ordered Defendants to "provide notice of the hearing date change to the federal and state agencies previously served pursuant to CAFA." (*Id*.)

In accordance with the Court's order, Defendants (through KCC) provided notice of the continuance to the CAFA entities on October 21, 2019. (Swanson Decl. at ¶ 10; Exs. C, D.) KCC has received no response from the CAFA entities to the notice of continuance. (*Id*. at ¶ 11.)

## IV.    CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request that this Court issue an Order: (1) finding that the Class Notice was adequate and reasonable, met the requirements of Rule 23, and constituted the best notice practicable under the circumstances; (2) granting final approval of the Settlement; and (3) directing entry of Final Judgment, dismissing the Action (including all individual and class claims presented thereby) on the merits with prejudice.

DATED: November 1, 2019                 GIANELLI & MORRIS

                                By:     /s/ Adrian J. Barrio
                                        ROBERT S. GIANELLI
                                        JOSHUA S. DAVIS
                                        ADRIAN J. BARRIO
                                        Attorneys for Plaintiffs